Thank you. Thank you very much. We'll reserve decision. Safe journey home. The final case on our calendar this morning is M.I.C. General Insurance Company v. Allen. My name is Agnes Willowitz, I'm an attorney with Hurwitz & Fine, and I represent... Could you pronounce your second name for me, please?  Willowitz. Willowitz, yes. And if you could stand a little closer to the microphone, that would be helpful. Oh, sorry. You can lift it up. Oh. I will do that. That's helpful. How's that? Better? Okay. I represent M.I.C. General Insurance Company, and I know insurance coverage is not the most exciting cases on your docket, so I'll try to distill the issues in this one very succinctly. At the crux of this case is a homeowner's policy, as a homeowner's policy requires the homeowner to reside or live in that property. In this case, the insured did not live in the property. I have a question about that immediately. Yes. Yeah. So we're talking about the duty to defend and indemnify under a State action. Yes. That was filed by Ms. Allen. Yes. Correct? And on the face of the complaint, I saw nothing having to do with the residence of Mr. Chambers, the policyholder, on the face of that State complaint. That's correct. But I saw facts about that adduced in interrogatories and in the deposition that occurred in the Federal District Court action, right? Yes. And I'm concerned that New York law may not permit us to look at those later adduced facts in determining the initial duty to defend question. My understanding is that New York law typically precludes looking outside the four corners of the agreement and of the complaint. So what gives us the authority to do that here? Your Honor, you're completely and absolutely correct. The duty to defend was triggered in this case. We provided counsel for the underlying insured. He is currently represented in the State case pending a determination of whether or not there's ultimately coverage in the case. But I understood that here we were considering both the duty to defend and the duty to indemnify. Correct. And, again, in assessing the duty to defend, you would say we can take advantage of an expanded record here because the District Court was acting in summary judgment? So we could look, we could determine about the residency, whether he was resident in the premises or not? Well, again, the duty to defend was triggered in this case. We did provide a defense. And ultimately, when you're looking at coverage as a whole, both duty to defend and duty to all of the facts to determine whether or not there's coverage for the claim in this case. Is the claim completed in the State court? No. It's actually informally stayed pending resolution of this coverage action. All right. So you brought, but you brought a declaratory judgment action here. Correct. We brought it in the Southern District against all parties, including the claimant who is here as the appellee and including the insured who appeared pro se in the Southern District case, sort of appeared here, and then never put in any papers. Okay. And in the State court action, the allegation is that it is the residence of your insured? Or is there no allegation of that? There's no allegation of that at all. In the underlying personal injury suit. So there's no way to know whether the assertion that you make that coverage is dependent upon him being in residence is available to us? Your Honor, with all due respect, it's not related. What's related, whether or not the claim is related to the residency, it's a matter The New York law about whether it's covered or not is generally deciding vis-a-vis acts of negligence or intentional conduct, and we interpret them in the light most favorable to the plaintiff with regard to coverage. But this is a little bit of a different animal in that it's the type of policy that's issued is called a homeowner's policy. Exactly. And on the endorsement lists as residence in your position is that that's clear. He has to live there for that to be covered with regard to this policy. That's exactly right. Other policies might cover the claim, whether there's a commercial policy out there, whether there's a different liability policy, whether there's a property policy, whether there are any other kinds of policies. That might cover the claim. This particular policy does not. New York law also says that you not only look to the language but the purpose of the policy. And oftentimes there will be proof with regard to actuaries will come in and say the type of risk that's insured, and it's intensified when the owner doesn't live there. That's exactly right. And so in a homeowner's policy, you have an insured who lives on the premises. That's a very different kind of risk than an out-of-position landlord living in another county or something like that that is not there on a day-to-day basis. Judge Furman found an ambiguity based upon the fact that there was a reference to an additional risk that there was a definition of resident's premises as amended to include, quote, the three or four family dwelling described in the declarations of this policy. And he said it did include the word resides. But then right next to it, the sentence appears, all other provisions of this policy apply, correct? That's exactly right. And with all due respect to Judge Furman, who is a great jurist, he didn't read the policy as a whole, and he didn't apply standing precedent on this exact endorsement that the operative text is that all other provisions apply. And if you read the ---- In fact, he didn't live in a two-family residence. It was a three-family residence, and the residence, the location, he was residing in the premises at the time, and it's that location that appears on the endorsement page. Is that not correct? He was not living there at the time. He hadn't lived there for seven years. No, at the time of the policy's issuance. Yes. So the policy would have been inaccurate as to the nature of the residence, but for the additional endorsement, correct? Well, there were multiple renewals. He hadn't lived there for seven years. He assumed the property from his parents. Listen to my question. Yes. It was at the time of its initial insurance, not a two-family residence, but a three-family residence. Correct. All right. And so the endorsement refers to a two-family. The initial endorsement refers to a two-family residence. That's then amended by the additional provision, which reflects three or four families, correct? Yes. I'm not sure exactly when it converted from a two to a three. It might have been at the inception of the policy. I don't know. Can I just ask you about this definition of residence premises? Yes. In the policy itself, for the two-family, it does specifically say you have to live in one of the units, right? Yes. But in the endorsement, it just said we're going to include the three or four family dwelling described in the declarations. It doesn't have that additional language of you've got to live in one of the three or four family units, right? I understand, but it would, frankly, be superfluous. It's one definition. It's not four separate definitions of residence premises. It's one definition when Red Together has multiple parts that are continuing to expand. The word residence is at the top of the endorsement. It's not that the word residence doesn't – is not contained in the endorsement itself. The whole thing, Red Together, requires residency. It's referring – it says the three or four family dwelling described in the That's – those are residences or premises where he resides. Yes. And if you go back to the first page of the homeowner's policy, it says also there residence premises. Right. So it does just – all this – all this endorsement does is expand it to three or four family dwellings, but the residence requirement remains the same. That's your construction of the language of the policy. That's not what Judge Ferman's constructive policy is saying. He said that if you – for the three or four family dwelling, you should have had the additional clause of – and you live in one of those units, right? That's where the rubber hits the road here, right? Yes. I mean, I'm not saying he's wrong or right yet, but I'm just saying that – That was – that is – My question is his analysis, right? Yes. That was his analysis. We find that to be patently unreasonable. This policy is only 36 pages long, and it has the word resident or residence 91 times. You can't say that because this endorsement doesn't say residence multiple times within it, it's not written into it. One more time in it. Well, one more time, yeah, I suppose, but it's called a residence premises endorsement, and it specifically references the residence premises definition. The idea, though, is that if you're living in the residence, it's more – it's less likely there's going to be a hazard, right? Exactly. Because you live there. Exactly. So the number of units increases the risk that there's going to be a hazard that you can't control. That's the whole purpose of living there, right? Exactly. So if you have a four-family house, the likelihood anyway goes up with those other three units, even if you live in one of the units. But that's not – and pardon me, I've gone over my time. Please take the time to answer Judge Droney's question. In terms of schedules and premiums and the way the risk is analyzed, when a homeowner lives at the property, that risk is very, very different when he's there on a day-to-day basis, sees things happening, sees accidents, can maintain the property. The risk is considerably lower than if you have an out-of-possession landlord with four tenants that he does not know, that he does not see on a daily basis. Could you take a minute to address also, before you sit down, the rental exclusion and whether it was raised before Judge Furman and what your view about its application is? It was, and again, with all due respect to Judge Furman, it's in my papers, it's in my memo of law in the Southern District case. It's docket – off the top of my head, I believe it's docket number 64, page 15 of my memo of law. We, in great detail, talked about the rental exclusion. But wasn't it still framed as kind of a subset of the main residence location or insured location discussion? Was it fairly presented to him as a separate basis for determining? Yeah, it had a separate heading. We talked about the fact that each exclusion is addressed seriatim. So even though that's not the main crux of the case, we broke it out separately. It's a separate exclusion. And it was raised in my underlying papers. Okay. Thank you. Thanks. Ruler for Mr. Shulman. Thank you. Good morning, and may it please the Court. My name is Jeffrey Shulman with the Law Firm Liner, LLP, and I represent Ms. Juanita Allen. Your Honors, this appeal presents three fundamental issues. I'm sorry. Thank you very much. I'm sorry. This appeal presents three fundamental issues, and before I get to them, I'd like to address one issue that Your Honor raised, and that is with regard to extrinsic evidence and the duty to defend. And New York law is quite clear that extrinsic evidence is not permitted in a duty to defend analysis in order to reduce coverage. It's permitted by an insurer to expand coverage, but an insurer cannot rely upon extrinsic evidence in order to avoid a duty to defend. Why in the circumstance in the context of a declaratory judgment action where this is akin possibly to the coverage period being totally inapposite, and there is undisputed evidence in the record on the summary judgment and the declaratory judgment that shows that the policy, for example, is not at all applicable. Why isn't it reasonable? Why doesn't it fall on some of the exceptions that New York law would recognize to look at those undisputed facts? Sure. And that's a perfectly valid point. Here what we're talking about is whether or not a policy provision is clear and unambiguous or whether it's ambiguous and subject to two reasonable interpretations. The duty to defend analysis is based strictly on what's known as the eight corners rule, the four corners of the insurance policy and the four corners of the underlying complaint. The policy refers to itself as a homeowner's policy, doesn't it? It most certainly does. And so a homeowner's policy, and at least I understand my homeowner's policy to cover the place where that's my home where I live. But it is a homeowner's policy. And, Mr. Chaffetz. It's not a commercial rental property policy. It's a homeowner's policy. Correct. Yes. And all the places that are insured locations have some connection to, as defined by paragraph four of the agreement, have some connection to the person living there or using it temporarily or building it as their residence, doesn't it? That's not entirely correct, Your Honor. Well, I guess a burial plot. Sooner or later you're going to end up living there or being there. Vacant land and — I never knew my — I've got to go back and check my own policy. Burial plots. Vacant land and cemeterial burial plots are two examples. Now, the other point, and this was, I believe, an issue of semantics, Mr. Chambers is the homeowner. There's no question about that. This is a residence that Mr. Chambers owns. The question then becomes, does the policy clearly and unambiguously require him to physically reside there? By the time that he got it, he was living there, right? That's correct. And it's listed as his residence at that time, is it not? It's listed as — He filled out the application. He said it was his residence, didn't he? No. It's listed — he is listed as the applicant, and the address is listed as the insured address. Okay. It says the residence — it says the — underneath his name up here at the top of the endorsement. The residence premises covered by this policy is located at the above address, unless otherwise stated, the residence premises. Correct. It doesn't say the piece of property that he owns. It says the residence premises. And — and — What do you understand the word residence to mean? That it's a residence. That people live there. It's not a commercial rental, as Your Honor articulated. But he lived. Not necessarily. It doesn't have to be where the insured lives. It has to be a residence that is owned by the insured. It's either a residence where you live, or it's a commercial rental where you don't live, because then the property is put to commercial use. There was no commercial use here. It was — I mean commercial use in the sense that you're renting out to other people to live in your building. Which he, under this — under this policy, he was permitted to do without losing coverage. And that goes to — You are. That's true. But it also said that he had to live there. Residence premises, the definition and insured location, both of those definitions include used by you as a residence, or where you reside. Correct. And so the application was from 2009. At some point after 2009, this endorsement is — is appended to this policy. And I noted in my brief, and for reasons only known to M.I.C., the reservation of rights letters initially sent to the insured after this claim was submitted did not include that endorsement language. But the endorsement was in exchange and consideration for additional premium and added an additional definition of residence premises, which Judge Furman correctly — But it also says all other provisions of this policy apply. And — and — Why does that incorporate the requirement of residence and the premises that's insured? All other provisions of the policy apply, but what Judge Furman was correct to conclude was that doesn't allow us to take language from the form and append it to the endorsement. But it's used throughout the whole policy. Why else would you put the language in there so you didn't have to repeat the whole thing? But that same — You're writing it right out of the policy, for God's sakes. But there was — there was — there must have been negotiations in exchange for additional premium that the — When you go in — when you go in and buy your homeowners, do you actually negotiate with your agent, or does he tell — he or she say, okay, this is what they'll cover, and that's it? Well, this — this endorsement was added. An additional premium was paid. And the other — although it says — We have to give the plaintiff meaning to what all other provisions of this policy apply, don't we? But we do. And we also have to give — Judge Furman didn't — didn't do that, did he? Judge Furman did precisely that. And what Judge Furman found was that to add — I think that's consistent with New York law. What Judge Furman said was to say that all other provisions of this policy apply require us to write words into the endorsement where they do not otherwise appear would be contrary to what the intent of that language is. And I would also — Notwithstanding the fact that two family residents identified in the endorsement required him to live there — It did. And when it substituted a three- or four-family residence and — and specifically referenced the endorsement and — and the declarations, that it — that it rode out the fact that he had to reside there? Is that what you're saying? No. What I'm saying is at some point the circumstances in — in the use of the residence changed, so the policy changed. And just like the policy — That would really change the nature of the coverage, wouldn't it? It did. And that's why the insured had to pay for it. Maybe you could take a minute to address the rental exclusion and explain why the rental exclusion doesn't also bar coverage. Yes. Thank you. So there — there's two points. One is that the — the Judge Furman correctly found that that — the — the argument raised in re-argument by MIC below was waived and abandoned. Now, in the initial summary judgment briefing, the only argument — one and only argument raised by MIC was that both the insured location exclusion and the rental exclusion initiated coverage because of this physical residency requirement. There was no mention or argument with regard to the exclusion other than that. Now — I think there might be, fairly read in the papers, a more fuller — a fuller discussion you're describing about the rental exclusion. So could — you can move on to the merits of the rental exclusion? Sure. Yes. Why doesn't that bar coverage? Sure. So there are — there are a number of points with regard to — to the rental exclusion. One is the — and MIC is correct in its papers that there is not an awful lot of case law on — on this point. But the — the first sentence of the provision provides is the exclusion arising out of the rental or holding for rental of any part of any premises, not just the insured premises or the — or the resident's location. And then it goes on to enumerate where coverage is being put back into the policy where it was otherwise taken. Those are exceptions as to which your client bears the burden, right? Bears the burden to show that there — that there is some potentiality for coverage in order to trigger the duty to defend, yes. Defend, but not to indemnify. Yeah. Right. And — and to — to veer off for a moment, the duty to indemnify, we argued below, and Judge Furman, I believe, was correct to agree until MIC asked the Court to do otherwise, duty to indemnify is measured at the end of the underlying litigation. This is — this is really about both. This is not a question of whether it is or isn't a negligent act that's determinative by a — by an issue of fact later to be determined by the jury. This is a straight-up law issue, whether there's coverage or not. The fact that it's — everybody knows it was used for rental. Nobody's — there's no art issue of fact about whether it did or did not reside there. So I — I understand that Judge Furman said that, but this is not the type of case where you're trying to figure out whether someone accidentally slugged somebody in the jaw or whether somebody intentionally slugged somebody in the jaw. This is about whether there is or is not coverage. Can the duty to indemnify just go — I don't — makes no sense to me. I mean, this is about — there's no facts in dispute here about whether there is or is not coverage, right? Well, there's — What would the factual findings be that might be different between an indemnification requirement and a defense requirement? Well, for example, in the rental exclusion, the question — all of the discovery taken by — and I see my time is about to — Please go ahead and answer the question, and I'd love for you to address which of those exceptions you think your client showed applied. But please answer, Judge Wesley. Thank you. So all of them potentially apply. And the issue, again, is whether or not there is the potential for coverage. Now, the cases cited by M.I.C., one, for example, the Homesite case in New Jersey, that actually — there was found to be coverage there. So the issue — the hurdle that M.I.C. had to overcome, which they were not able to overcome, is, for example, in this first carveout, the occasional basis if used only as a residence. In all the cases cited by M.I.C. in which this occasional basis issue was raised, there is evidence of a lease or some evidence of when the property — when the premises was being rented, to whom, for what period of time. It was a little girl that was injured. Her mother was renting the place. Yes. But there was no lease. It was a month-to-month situation. You're talking about what the record shows about whether this was an occasional basis or whether this was a long-term lease? Because this rests on — my understanding is, under New York law, the obligation to — the burden to show an exception is on you. So I want to know exactly what in the record establishes the applicability of the exception. Sure. Well, the record establishes that there is — the evidence — the extrinsic evidence that M.I.C. sought to acquire below related only to whether or not Mr. Chambers resided at the premises on the day of the occurrence. There was no discovery taken with regard to the term during which Ms. — Again, the burden rests on you. Or the burden. That's what the point — that's what Judge Carney is asking. What did you show to overcome that? Well, our — our burden isn't to prove — our burden on the duty to defend isn't to prove as a matter of law that the exception provides coverage. Our duty on the — our burden on the duty to defend is show that there is a potential for coverage, which is — which is what we've done. Our burden isn't to show as a matter of law that the exception to the exclusion applies as a matter of law. But if we were to reach the indemnity issue also, which has a strange procedural posture — Indeed. Yeah. Is there anything in the record by which we would find that one of these exceptions applied to the exclusion? There is — in my estimation, there is nothing in this record which would allow this Court to reverse Judge Furman and find that as a matter of law, the — none of these exceptions put back within coverage this claim, which is what would — which is what the standard is. And if I may, very briefly, since — and stop me if it's not okay, but if — Just take a minute to tell us what additional thought you have and then wrap up, please. Thank you. I appreciate that. So on — on the — the interesting procedural posture below with regard to indemnity and what Judge Furman actually described as odd, the — the duty to defend measured at — generally speaking, the duty to defend measured at the beginning of the case based on potentiality for coverage. Generally speaking, indemnity at the end of the case based upon how the case is resolved. The — the — a typical procedural posture in a case like this would have been, Judge Furman determined that there was a policy ambiguity. MIC had a duty to defend. Under a reservation of rights to assert any coverage offenses it chose with regard to indemnity on another day. And that — and that is consistent with — with New York law. Judge Furman had the ability to do that. And had MIC then taken the — the posture that I believe is typical in those types of situations, MIC would continue to defend its insured under a reservation of those rights. And at the end of the case, if necessary, we would have gone back to Judge Furman and dealt with the indemnity issue. What MIC did, and what Judge Furman described as odd, is that MIC said on reconsideration, Your Honor, if — if Your Honor will not reconsider and grant the insurer a summary judgment finding no coverage, no duty to defend, we also ask that you find against us, against the insurer, on the issue of indemnity. And that, I believe, falls squarely within the invited error doctrine because MIC specifically asked the court to do something that it did not have to do, that it did not necessarily want to do. And MIC — But the district court didn't err. It was just asked to make a ruling now. And I can imagine that the insurer might have felt that the district court, having found it construed the contract in one way that's going to govern the indemnity, that why not just take an appeal right then? Why is that wrong? Wait. Why wait? Well, and that's — that is certainly what MIC — I will make a ruling with regard to whether there's a duty to defend. If you lose, it's over. If you win, you win. Well, that would — So there's no reason for us to make a ruling on the duty to indemnify. So it's not invited error. We don't have to review whether that was right or wrong. Okay. Well, then that's what invited error is about. Yes, Your Honor. So barring any other questions, I have nothing further, and I appreciate the additional time. Okay. Thank you. Thank you. Thank you very much. Ms. Wheelowitz, please. If you could comment on the unusual posture on the — Yes. — duty to indemnify, that would be helpful. So if I could provide some insight. We did make our summary judgment motion, and we lost in a very strange way, where effectively the declaratory judgment action was stayed pending resolution of the underlying case, which effectively put us on the hook for defense costs through trial. And the judge reasoned that that would mean that if at the end our client was found to have no liability, indemnity would be moot, which I understand. We have very sympathetic underlying claimant, and maybe that would have put us in a better settlement posture or something like that. But we provided a courtesy defense in this case for our insured, for the customer, because of the broadness of the underlying pleadings. And then — But you do contest that you had a duty to defend, don't you? We do. And frankly, we didn't have to provide a defense or indemnity. We could have started an immediate declaratory judgment action. The problem would have been our customer would have then had a default judgment against him, and we would have been right back in the same position where the claimant would have sued us directly. Immediately after the taking of a default judgment, the injured party under 3920 or the provision of the insurance law steps into the shoes of the insured and then begins an immediate coverage claim in New York court and litigates the whole issue all over again. So you took the bull by the horns.  And in order to control the litigation — This happens a lot. We provided our own counsel and our own defense, you know, in order to see whether there was liability or not. And maybe indemnity would have been moot. But the procedural posture of the Southern District case was, in fact, odd, probably just to keep the insurance company at the table, you know, as a practical matter, which is why we did ask the court to just rule on coverage. Defense and indemnity is sort of one package in coverage. If there's coverage, there's both. And if there's no coverage, there's neither. We've said that the duty to defend is a broader duty, typically — It is. — than to indemnify. And one could argue that you've abandoned any — having sought voluntary — sought a ruling against yourselves on indemnity, that you've abandoned any challenge. And we might take that under advisement. I'm sorry if I'm going over. And I could talk to my client of whether or not we would even seek recruitment of — if we — if there was a finding of no coverage, we would, you know, determine whether or not there was recruitment or whether that was a — you know, we provided that as a courtesy defense as just a cost of doing business. But at the end of the day, if there's no indemnity and there's no coverage — You've got no breach claim against the defense. You're covered for the fact that you made a business decision to cover them during the state litigation. I don't know how you can do that. That's exactly right. Can I just ask you another topic? And that is the premiums and the coverages. When this endorsement was added for the three- and four-family homes, the premium did get increased because of that. Is that right? Yes. And my understanding was that that change — I deposed Mr. Chambers myself. And I understand that change happened years and years ago. And there were subsequent renewals of this policy. Every single year, with this three-family dwelling, he signed an application just to — That's not really my question. How much did the premium go up, do you know, from the initial time when it was switched with the endorsement? That I don't know. Was it considerable? That I don't know. But I know it would be considerable if it were changed to a full rental commercial property. That's not my question either. I know. Can you answer my question? Yes, I don't know. When that first time the endorsement hit, do you know whether the premium increased considerably for Mr. Chambers? I don't know. That wasn't initial. Okay. Here's my next question, then. How about the limits of liability? There's a $1 million personal liability. There's a $640,000 building coverage. Do you know whether those limits of liability went up?  Okay. Thank you. Thank you very much. Thank you both for your arguments. We'll reserve decision. We have.